[L. A. No. 17470.   In Bank.—August 26, 1940.]

DON L. YALE, Petitioner, v. THE STATE BAR OF CALI-
FORNIA, Respondent.

Preston & Preston for Petitioner.

Philbrick McCoy, Fred E. Lindley, Frank Downer, Arthur
F. H. Wright and Claude Minard for Respondent.

THE COURT.—This is a proceeding to review the record
in a disciplinary proceeding initiated when the respondent
State Bar issued its notice to the petitioner, an attorney, and
his law partner to show cause why they should not be disci-
plined for asserted professional misconduct based on facts al-
leged in four separate counts, only three of which, however,
had application to the petitioner herein.   We are not pres-
ently concerned with the charges as they may affect peti-
tioner's law partner.   That is a matter for consideration in
a separate review proceeding here pending.

At the conclusion of its hearings, at which considerable
evidence was adduced, a local administrative committee made
findings and recommended that petitioner be disciplined "but
certainly not more than thirty days suspension".   In the

main, the board of governors adopted the findings as to the circumstances underlying the several charges, but deleted therefrom such portions thereof as tended to indicate innocence or good faith on the petitioner's part.

The evidence has been examined and we are satisfied that upon two of the charges made against petitioner no discipline should be meted out to him. As to these charges, it definitely appears that petitioner was free of reprehensible conduct, either because his partner had handled the matter or because the fault underlying his conduct was the result of an apparent honest error of law. To sustain our conclusion with respect to the so-called "Lockwood Fee" matter we need only refer to the brief of the respondent State Bar, wherein it is stated that "The facts here are, in substance, that the firm of Stanford and Yale charged and collected an unconscionable fee for services rendered, in a manner which amounted to a fraud upon the client. The board found that petitioner had no part in fixing the fee, and is willing to have his civil liability fixed and to return to the client so much of the excessive portion of the fee as he may have received as a member of the partnership. The evidence here sustains those findings. We believe that petitioner correctly states the law to be that he is not subject to discipline for the acts of his partner in which he did not participate. (*In re Luce,* 83 Cal. 303, 305 [23 Pac. 350].) Accordingly, this matter calls for no further consideration here." We are in accord with what respondent states in its brief and, as indicated, we are of the view that the evidence addressed to the "Lockwood Fee" matter fails to disclose any improper conduct on petitioner's part and consequently will not support the imposition upon him of any disciplinary measures.

Our conclusion must necessarily be the same with respect to the count directed to the "Hickox Estate Fee", wherein the petitioner was criticized for the method employed by him in computing his fees on the settlement of said estate. The local administrative committee found that he had acted honestly, though erroneously, in making such computation; that he had made full restitution of the overcharge, and that there was no ground for discipline based on this count. The evidence was sufficient to support the findings and conclusion of the committee and no good reason appears why the same should be disturbed.

■ We cannot, however, excuse petitioner's conduct on the count addressed to the sale of the "Broughton Contract". Examination of the evidence with respect thereto shows that petitioner's law office associate was the executor of an estate and that petitioner was his attorney as such executor. As part of the assets of this estate there existed a contract for the sale of real property on which payments had been regularly made, there being a balance due thereon of $2,330.65, for which amount the contract had been duly appraised in the course of the probate proceeding. In March and April, 1936, the executor and petitioner, as his attorney, and who, as stated, were law office associates, negotiated for the sale of this contract to petitioner's brother-in-law for the sum of $1100. As a result of a reappraisal at the latter figure (procured by petitioner or the executor from another appraiser), and the representation that a higher bidder could not be found, the probate court confirmed the sale to petitioner's brother-in-law on April 10, 1936. Almost immediately thereafter petitioner arranged with his law office associate, the executor of the estate, for a resale of the contract for $1600 by petitioner's brother-in-law to a client of his law office associate, which client had deposited $1500 with the latter for investment purposes. This deposit was so made at or about the time negotiations were pending for sale of the contract to petitioner's brother-in-law and certainly prior to the confirmation of such sale. If we accept petitioner's testimony, his brother-in-law advanced only $400 toward the purchase of the contract, which was repaid to him upon the resale to the client of petitioner's law associate. In effect, the $1100 received by the estate for the contract came from the latter. And, while petitioner has contended throughout that the sale to his brother-in-law for $1100 and the resale by him immediately thereafter for $1600 represented *bona fide* transactions, it is significant that the $500 profit on the resale did not reach the pocket of petitioner's brother-in-law, but instead was and is retained by petitioner. True, petitioner testified and has maintained that he retained the $500 profit not as his own but only by way of satisfaction or partial satisfaction of an indebtedness owed to him by his brother-in-law. Considering in its entirety all the evidence addressed to this count, we are firmly of the view that it reflects discredit upon petitioner's conduct as attorney for the executor. In effect, he

178

represented both the original buyer (his brother-in-law) and the seller (the executor, his law office associate) in a transaction which it must be concluded from a reading of the record was not for the best interests of the estate. We have no hesitancy in stating that the almost complete lack of knowledge by petitioner's brother-in-law (who appeared as a witness) as to the details of his asserted purchase and resale of the contract originally belonging to the estate raises a serious doubt as to the sincerity of the claim that they were *bona fide* transactions and negotiated for his benefit alone. A profit therefrom to petitioner, the attorney for the executor, whether direct or by asserted partial payment or satisfaction of an indebtedness owing to him by the original purchaser, may not under all the circumstances here present receive the approbation of this court. It may reasonably be inferred from the evidence that petitioner did not act in conformity with good practice or the rules of professional conduct.

For the foregoing reasons, petitioner is suspended from the practice of the law for one year, effective thirty days from the date of the filing of this opinion.

Edmonds, J., not having been present at the argument of this case, did not participate in its decision.